## *In re* KELLY.[1]

(*Circuit Court, D. Minnesota.* March 10, 1886.)

1. EXTRADITION — TREATY WITH GREAT BRITAIN — DISCHARGE OF ACCUSED FOR WANT OF TESTIMONY—SECOND ARREST AND EXAMINATION—SECOND MANDATE.
   Where a party accused of crime has been arrested, had an examination before a commissioner duly appointed, and been discharged by order of the executive on the ground that the evidence was not sufficient to justify his extradition for the crime charged, he may be again arrested for the same offense, and compelled to submit to a second examination without the issuance of a second mandate by the executive.

2. SAME—REVIEW OF TESTIMONY ON SECOND EXAMINATION BY CIRCUIT COURT.
   If the commissioner should commit the prisoner upon the second examination, and it should be apparent that he had no clearer or more convincing testimony as to the truth of the charge than was presented at the former examination, the circuit court has power to review the testimony, and correct his error.

3. SAME—COMPLAINT, BY WHOM PRESENTED.
   It is not necessary that the attorney general, or any member of the executive department, of a foreign nation should himself make the complaint on which the accused is arrested. Any person whom he authorizes, or whom he delegates to act for that government, is a proper person to appear and file a complaint.

4. SAME—EVIDENCE OF AUTHORITY TO ACT FOR FOREIGN GOVERNMENT.
   Whether a party making complaint is duly authorized to appear in behalf of the foreign government is a matter to be inquired into before the commissioner.

Petition for Writ of *Habeas Corpus.*

*P. A. E. Irving,* Dep. Atty. Gen. of Canada, and *C. A. Congdon,* for the prosecution.

*Thos. Ryan, Halvor Steenerson,* and *John W. Cathcart,* for defense.

BREWER, J. We are prepared to decide the *habeas corpus* case that was submitted to us two days ago; and I may say both Judge NELSON and myself have given the matter the careful examination which the question demands, and we agree in the conclusion which I shall announce. The petition alleges that the petitioner was arrested on the thirty-first day of August, 1885, by virtue of proceedings commenced before Mr. Spencer, a commissioner duly authorized; that testimony was heard before the commissioner, and the petitioner bound over; that the proceedings and the testimony were certified to the department at Washington, and on the fifth of February the executive issued an order to discharge him; that thereupon a new affidavit was filed charging the same offense, and in pursuance thereof the petitioner was rearrested, and is now in custody while an examination is pending before the commissioner; and it is claimed that for three reasons the petitioner should be discharged.

It is insisted, and that is really the principal question, that independent of treaty obligations no proceedings can be had in this coun-

try for the arrest of one charged with crime committed in another; that the whole power of the judiciary to act depends upon treaty stipulations; and that this treaty stipulation contemplates but one proceeding, which being terminated by the action of the executive adversely to the extradition exhausts all the obligation of the treaty, and puts an end to any further power of arrest. That, of course, is a question of great importance, and no case exactly in point has been presented. There have been cases in which after one preliminary examination in which defendant was discharged a second has been had, but no case in which after the one preliminary examination, and after action by the executive department refusing to extradite under such proceeding, there have been subsequent proceedings for the same offense, and under the same treaty obligation. That, of course, compels an examination of the treaty to see what its purpose and scope is. Article 10 is as follows:

"It is agreed that the United States and her Britannic majesty shall, upon mutual requisitions by them, or their ministers, officers, or authorities, respectively, made, deliver up to justice all persons who, being charged with the crime of murder, or assault with intent to commit murder, or piracy, or arson, or robbery, or forgery, or the utterance of forged paper, committed in the jurisdiction of either, shall seek an asylum, or shall be found, within the territories of the other."

What is the main purpose and scope of that contract obligation between the two nations? Is it limited to a mere contract as to the manner in which the alleged criminality shall be investigated, or is it, on the other hand, a contract that the alleged fugitive shall be extradited, leaving the details by which the criminality is to be ascertained to the authorities of the respective governments? It seems to us that the latter is the true intent and purpose; that the alleged fugitive, if his criminality is sufficiently ascertained, shall be surrendered. This is in furtherance of what must be conceded to be a just policy, and it is a policy that has gradually become recognized all over the civilized world; that while this government opens its doors to all citizens of every nation, it does not mean that this country shall become an asylum for the criminals of those nations; that it is for the interest of every nation, and of every individual, that no criminal shall anywhere find an escape from the pursuing hands of justice. It is not a contract that one government shall furnish to other governments one opportunity for investigating,—one time for inquiry, —but that it will surrender the alleged criminal if his criminality shall be clearly ascertained. It is conceded law that where one is arrested for a local offense, and a preliminary examination fails for any reason,—such as a defect in the jurisdiction of the examining magistrate, lack of evidence, informality of papers,—that is no bar to a second proceeding.

We do not assent, however, to the proposition which was suggested that these preliminary examinations for local offenses may be con-

tinued indefinitely. We do not believe it is true that a man can be subjected time after time to the annoyance, vexation, and harass of repeated examinations. And while it may be technically true that one examination is no bar to another, yet whenever it becomes apparent that the examinations are instituted and carried on not with a view to the furtherance of public justice, but with a view of enforceing personal spite and private malice, no doubt it is in the power of the court at any time to interfere and stop them. It is unnecessary to wait until the close of an examination, and then, if the accused is bound over, to interfere; but whenever, in a case of a preliminary examination for a local offense, it is apparent that the same is carried on for the purpose of gratifying personal spite, or for the annoyance and vexation of the party arrested, we think a court has power to take hold of it with a strong hand; and so in cases where proceedings are instituted under and by virtue of treaty stipulations, and it is apparent that the arrest is simply to gratify the personal malice of an individual, or of the authorities of a foreign nation, I have no question as to the power and duty of the court to lay strong hands upon those proceedings, and to stop them altogether. But the mere fact that one examination has failed by reason of a lack of sufficient testimony is no bar in law to a second, and the court ought not to interfere until it appears that the second is instituted for the purpose of private malice. We all know how often, in the administration of justice, it happens that a preliminary examination fails. The testimony first presented is insufficient; the officer is found not to have jurisdiction; the complaint is technically defective, and the proceedings fail. It would be an outrage upon justice if for any such reason as that there could be no further prosecution of one charged with crime, and equally, in extradition cases, a violation of the spirit, if not of the letter, of the treaty. It seems to us that it is as if this government should say to a foreign nation: "True, we have agreed by solemn compact to return to you a man who is charged by a person duly authorized with having committed a crime, if the evidence of his crime is satisfactory, but in this instance we will not surrender him simply because on the first presentation of your case you have failed to make out a sufficient showing."

We do not question the fact that an extradition requires the assent of both the judicial and the executive, and that the executive is the final tribunal to determine it; and whenever it appears that the executive has said that the alleged offense does not come within the scope of the extradition treaty, or when the executive says he is satisfied that the prosecution is instituted for political reasons, or to gratify private malice, and therefore the offender shall not be extradited, that concludes all further inquiry by the court. But when it is determined by the executive, as in this case, merely that the testimony presented is insufficient, we think it leaves it as in other cases of preliminary examination, and there can be a second inquiry. The

letter from the department, which is in the handwriting of some official, and signed by the secretary of state, says: "He therefore directs you to discharge Edward Kelly from further custody under the commissioner's commitment." So far it is in the handwriting of the clerk; but the secretary adds, in his own handwriting, "In these proceedings," as though he would carry the intimation that as far as the testimony was then presented,—as far as the proceedings then disclosed,—the showing was insufficient, but did not intend to foreclose further inquiry or examination.

It is secondly urged that no mandate has been issued, and that a mandate from the executive is necessary before the judicial authorities can act. Whether a mandate is necessary at all is one of those disputed questions which cannot be said as yet to have been determined. There has been read a case—indeed the only case, I think —in which the question has been presented to the supreme court of the United States. In that case four of the justices held that no mandate was necessary. Three held that it was, but all agreed that the court had no jurisdiction in that case, so that what was said was mere *dictum* on both sides, and there has been as yet no authoritative determination by that court as to the necessity of a mandate. The extradition law may, perhaps, suggest that no mandate is necessary; for it says:

"Whenever there is a treaty or convention for extradition between the government of the United States and any foreign government, any justice of the supreme court, circuit judge, district judge, commissioner authorized so to do by any of the courts of the United States, or judge of a court of record of general jurisdiction of any state, may, upon complaint, made under oath, charging any person found within the limits of any state, district, or territory with having committed within the jurisdiction of any such foreign government any of the crimes provided for by such treaty or convention, issue his warrant for the apprehension of the person so charged, that he may be brought before such justice, judge, or commissioner, to the end that the evidence of criminality may be heard and considered."

Not "may, upon complaint based upon a mandate, or after the issue of a mandate," but may "proceed upon complaint made." Yet, assuming that a mandate is necessary, what does that mandate mean? It means simply that the executive department of the government authorizes the proceeding before the judicial department. A mandate in this case was issued. I do not understand that a mandate which puts in motion the action of the judicial department exhausts itself and becomes a dead letter whenever any proceedings had by that department fail. All that the mandate contemplates, and is intended to provide for, is a recognition by the executive that this is a case which comes within the scope of the treaty, and calls for judicial investigation. The question is therefore presented to the judiciary for examination. It remains operative until recalled by the executive, or he signifies in some way that its functions are exhausted. Here the

letter from the department to the marshal indicates only that the testimony before the commissioner is insufficient.

The final proposition made is that the complaint is not presented by the proper person. It is sworn to by ————, and in his affidavit he swears he is a citizen and a resident of the province of British Columbia, and acts herein for and in behalf of and pursuant to instructions of the government of the Dominion of Canada and the attorney general of British Columbia. The treaty provides that "upon mutual requisitions by them, or their ministers, officers, or authorities." I think that under the treaty it is not necessary that the attorney general, or any member of the executive department of a foreign nation, should himself come. Any person whom he authorizes, or whom he delegates to act for that government, is a proper person, within its scope, to appear and file a complaint. Generally it would be an unnecessarily severe construction of that treaty to require any member of the executive department of a foreign nation to appear in person, and thus take him away unnecessarily from the discharge of those duties which we may fairly presume devolve upon him at home. It is enough if any person duly authorized appear in behalf of that government and make complaint. Of course, the question of fact is not settled. That is a matter to be inquired into before the commissioner,—as to whether the party making complaint is thus duly accredited. If it should appear that he was not; that he was simply a private citizen, pursuing this matter for private purposes,—of course the commissioner would act accordingly.

We have given this matter a very careful consideration, owing to the fact that we deem it of importance, and that no previous case of this kind has arisen. The petition for *habeas corpus* must be refused, and the petitioner remanded into the custody of the marshal.

I would add that we both are of the opinion that if the commissioner should commit upon this examination, and it should be apparent that he had no clearer or more convincing testimony as to the truth of the charge than was presented before, the court has power to review the testimony, and say that the executive having once passed upon it, the commissioner is bound to follow it; and if he does not, the court will correct his error.