### Ex parte SCHORER.

(District Court, E. D. Wisconsin.   April 17, 1912.)

1. EXTRADITION    (§   15*)—INTERNATIONAL—PROCEEDINGS—SUBSEQUENT PROCEEDINGS.

Where the discharge of an alleged fugitive from the justice of a foreign country arose through a default, either by reason of a failure to comply with the rules of procedure, or through a failure to produce competent evidence sufficient to hold the fugitive as one liable to extradition, a second arrest and examination in proceedings for his extradition is permissible.

[Ed. Note.—For other cases, see Extradition, Cent. Dig. §§ 17, 18; Dec. Dig. § 15.*]

2. EXTRADITION (§ 9*)—INTERNATIONAL—TREATIES—OBLIGATIONS.

The obligation of the government to institute extradition proceedings pursuant to a treaty with a foreign government for the extradition of an alleged fugitive is binding on the government until it can in fairness say to the foreign government that any further attempt as against the alleged fugitive to subject him to extradition proceedings is subversive of the protection which the government affords to all within its borders, and is repugnant to the principles recognized by the government

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

in its own courts. and toward its own citizens in the arrest and examination of alleged offenders.

[Ed. Note.—For other cases, see Extradition, Cent. Dig. §§ 9, 10; Dec. Dig. § 9.*]

3. EXTRADITION (§ 14*)—INTERNATIONAL—PROCEEDINGS—POWER OF UNITED STATES COMMISSIONER.

A United States commissioner, who has jurisdiction to issue a warrant of commitment in proceedings for the extradition of an alleged fugitive from the justice of a foreign country. has the necessary and incidental powers for the exercise of such jurisdiction, and he may adjourn the proceedings and determine the sufficiency of the grounds on which he may exercise such power, and in the absence of anything impeaching the good faith of the representations of the foreign government respecting forthcoming evidence and the good faith of the commissioner adjourning the proceedings in accepting such representations as reasonable grounds for an adjournment for reasonable lengths of time, the court will not discharge the alleged fugitive on habeas corpus.

[Ed. Note.—For other cases, see Extradition, Cent. Dig. §§ 15, 16; Dec. Dig. § 14.*]

4. EXTRADITION (§ 12*)—INTERNATIONAL—SUBSEQUENT PROCEEDINGS FOR EXTRADITION.

Where an alleged fugitive from the justice of a foreign country was discharged from custody on the ground of the insufficiency of the evidence to show his commission of crime in the foreign country, a United States commissioner, issuing a warrant in a subsequent proceeding for the extradition of the fugitive on the representation that the foreign government has additional evidence, need not in advance determine the sufficiency of the additional evidence, but he may on a hearing after the second arrest of the fugitive determine whether the additional evidence justifies extradition.

[Ed. Note.—For other cases, see Extradition, Cent. Dig. § 13; Dec. Dig. § 12.*]

Application of Michael Schorer for a writ of habeas corpus. Denied, and petitioner remanded to custody.

E. J. Henning, for petitioner.
H. H. Barnum and Emil Wallber, for the German government.

GEIGER, District Judge. On April 12th Michael Schorer filed his petition for a writ of habeas corpus, representing that the United States marshal for this district holds him in custody under and by virtue of a temporary warrant of commitment issued by Francis Bloodgood, United States commissioner for the Eastern district of Wisconsin, and has so held him since the 16th day of March, 1912. Upon such petition a writ of habeas corpus was issued as well as a writ of certiorari directed to the marshal and to the commissioner, respectively, commanding the production of the petitioner and the certification of the records in the proceedings before the commissioner referred to in the petition.

It appears from the records in former proceedings, as well as from statements made on the hearing of the present proceeding, that the petitioner was arrested last November as an alleged fugitive from justice from the Kingdom of Bavaria, charged with the crime of forgery and the utterance of forged acceptances or bills of exchange. Upon this proceeding the petitioner was committed to jail to await

the action of the Executive Department of the United States. He was subsequently discharged on habeas corpus proceedings, on the ground that the commissioner entertaining the proceedings had not been authorized to act as extradition commissioner. Upon his discharge the petitioner was taken into custody by an immigration inspector of the United States, and proceedings were had for his deportation upon the ground that he is an undesirable immigrant, having committed crime in Germany. Testimony having been taken, the matter was referred to the Secretary of Commerce and Labor, upon whose recommendation he was discharged. He was again arrested upon second extradition proceedings, again committed to jail to await the action of the Executive Department, and again sued out a writ of habeas corpus, which was heard before Judge Sanborn, who rendered a decision March 4, 1912, discharging the petitioner upon the two grounds that the record failed to disclose an executive mandate of requisition, and that it fails to show a sufficient prima facie case of forgery under the law of Wisconsin.

It may be questioned whether the facts last above recited are in any way pertinent upon the present hearing, for the reason that the returns of the marshal and the commissioner to the writs addressed to them, respectively, are not met by any pleading other than a formal traverse or are accepted as verities in the proceeding. However, such facts were referred to and will aid a consideration of the contentions made by the parties on this particular hearing.

On March 16th, after the discharge of the petitioner, he was again arrested upon a warrant issued by Commissioner Bloodgood pursuant to a complaint made before him by the consular agent of the German government, charging the crime of forgery and utterance of forged acceptances and bills of exchange by the petitioner in the Kingdom of Bavaria, Germany, at the times and under the circumstances detailed in said complaint. The marshal makes return to the writ of habeas corpus that he holds the petitioner by virtue of a warrant or mittimus, of which a copy is also returned, and the commissioner has certified the records of the proceedings before him, from which the following facts appear:

First. That on March 16th the complaint referred to was filed, the complainant examined on oath, from which it appeared that the offenses alleged had been committed. That the petitioner was taken into custody by the marshal, brought before the commissioner, advised of the contents of the complaint, and requested a postponement to enable him to procure counsel. The counsel for the German Empire, being present, stated that additional proofs from Bavaria referred to in the complaint could not be transmitted in less than 14 days. Whereupon the commissioner ordered an adjournment of the proceeding until March 26th, the accused being in the meantime committed to the Milwaukee county jail by virtue of the mittimus issued to the marshal.

Second. On March 26th, the matter being again called before the commissioner, the German Empire and the accused appearing by their respective counsel, at this time counsel for the petitioner and

accused moved for a dismissal of the proceeding on the ground that the accused had been discharged on habeas corpus on the identical charge now made, on the ground that the examination did not show sufficient proof to justify commitment, and that the accused is not subject to rearrest on the mere allegation in the complaint that the German government has made representations that it will forward new evidence of forging and uttering forged bills of exchange by the accused and an associate also formerly arrested. At this time it was also contended that advice as to the exact character of the alleged new evidence is required to justify rearrest. The motion of the accused was denied and the hearing again adjourned to April 4, 1912.

Third. On April 4th, the matter being again called, consul for the German Empire represented to the commissioner that the telegraphic advices respecting new evidence had been confirmed to the Imperial German Consulate at Chicago; that such evidence had not arrived, but was shortly expected. On the same day the correspondence between the Imperial Foreign Office and the German Consulate at Chicago confirming the telegraphic advices was filed with the commissioner. The matter was further adjourned to April 9, 1912.

Fourth. On April 9th, the matter being again called, the consul for the German Empire appeared and filed the correspondence between the Secretary of State and the Imperial German Embassador at Washington, acknowledging the receipt from the German government of a requisition for the extradition of the accused, also a certified copy of a translation of a cablegram from the Foreign Office at Berlin to the German Consulate at Chicago, stating that the depositions were to be forwarded April 4th. Upon the statement that the new testimony when received could not be translated sooner, the matter was continued to April 19, 1912.

The foregoing facts certified by the commissioner are accepted upon this hearing as being a correct recital of the proceedings which have taken place since the arrest of the petitioner on March 16th. It is assumed that the arrest and detention now here for review are upon a complaint which includes the charges set out in the proceeding which was before Judge Sanborn for review, though such charges are set forth in greater detail, and the complaint includes charges of forgery and uttering forged acceptances other than those detailed in the former complaint.

[1] On behalf of the petitioner it is claimed broadly that the present detention cannot be justified upon mere representations of forthcoming new or different evidence; that until such evidence is actually produced, the discharge from former arrest should bind both the German and the United States governments, though perhaps not strictly with the effect of a former acquittal. On behalf of the German Empire, it is contended that under the law a subsequent arrest and re-examination are not only permitted, but that, upon representations made to the federal government in good faith, it is the duty of the latter not only to entertain the proceeding, but to permit its prosecution under the same safeguards as attend the

first or original examination, subject only to the requirement that possibly a higher degree of diligence be exacted in the preparation of the proofs and in pressing the matter before the commissioner.

There does not seem to be much doubt as to the legal principles governing this situation. The rule laid down in Re MacDonnell, 11 Blatchf. 100, Fed. Cas. No. 8,771, and which has been followed and applied in subsequent cases, clearly recognizes the right to institute second proceedings where the alleged fugitive has been once examined and discharged. The discussion found in the opinion in this case, as well as in the case of Re Harsha, 11 Ont. Law Rep. 494, points out clearly the scope as well as the limitations of subsequent hearings; and it would seem that such second arrest and examination is always permissible where the first discharge arose through a default, either by reason of a failure to comply with established rules of procedure, or through a failure to produce competent evidence sufficient to move the commissioner or the court to hold the accused as an offender liable to extradition.

[2] Indeed, it was conceded upon this hearing that the power on the part of the government, and therefore its duty, to institute second proceedings, is not open to question. The question is therefore presented: Is there anything in the record before us showing any fact or circumstance, or any course of procedure by reason of which it can be successfully contended that such power has been lost, or that the government must, out of respect to the rights of the accused, be held to be absolved from the duty of exercising it? I think this question must be answered in the negative. The record before the court, and even considering the facts pertaining to the former arrest and examination of the petitioner, certainly cannot be construed to show that the government of the United States has been absolved through any act of the German government or its officials, from the treaty obligation. It must be assumed that this obligation is binding upon this government until it can in all fairness say to the foreign government that any further attempt as against the petitioner to subject him to extradition proceedings is so subversive of the protection which this government desires to afford all within her borders, and is so repugnant to the principles recognized by this government in its own courts and toward its own citizens in the matter of arresting and examining alleged offenders, that the right of the German government to insist upon the performance of the treaty obligation has either been exhausted or can no longer be urged.

[3] When, therefore, we assume that the commissioner had the jurisdiction to cause these later proceedings to be instituted, we must assume that he had the necessary, incidental, and convenient powers for the exercise of that jurisdiction. It would well-nigh frustrate the purposes of the extradition act if offenders could at any stage of the proceedings before the commissioner call for a review of the proceedings and ask for a discharge on the ground that the commissioner exercises his powers or his discretion differently from the manner in which he or others might have exercised them. He doubtless had the power to adjourn the proceeding, and, having the power, there was committed to him the duty of determining the sufficiency

of the ground upon which he might exercise that power. It appears from the return that from the outset the adjournments were granted upon the representations of the German government respecting forthcoming evidence. There is nothing in the return in the slightest degree impeaching the good faith of the representations made to the commissioner, much less his own good faith in accepting such representations as valid and reasonable grounds for adjourning the proceeding for reasonable lengths of time to enable him to discharge his duties as an extradition commissioner.

[4] It was suggested that when the present proceeding was instituted the commissioner should not have entertained it unless the alleged new evidence was then and there presented. To that it can well be replied that this would call upon him in advance to determine the very purpose for which the second proceeding is instituted. The accused has a right to be heard upon the question whether the new evidence is such as supplies the alleged defect in the former proceedings, and he has a right to have this new evidence presented on the second hearing just as it would have been presented on the first. If the second hearing should develop the same weaknesses disclosed upon the first, the accused ought to be discharged. But such weaknesses or added strength can develop only through a hearing of the proposed evidence; and unless and until it is reasonably clear that the rearrest and re-examination are in fact, or in effect, furthering a course of harshness or oppression, or a policy or purpose ulterior to the honest and efficient performance of the treaty obligation, the proceedings before the commissioner should be allowed to take the course designed by the statute. It may be noted that upon the former hearing the German government presented a voluminous record of testimony taken abroad, which its representatives doubtless conceived made out a case for extradition. Such record certainly disclosed a diligent effort to present the facts and circumstances attending many different transactions. The court here was of the opinion that the evidence fell short of making out a prima facie case. The subsequent arrest and re-examination being then instituted, the government here and the officials charged with the duty of carrying out the provisions of the treaty and the statutes, not only had the right, but are in duty bound, to accept in good faith for a reasonable time the representations made by the highest consular officials of the foreign government respecting new and forthcoming evidence. These representations should be accepted in view of the further fact that the alleged offenses covered a wide range of transactions, many witnesses must be examined, and that the distance between the two countries is such as necessitates a lapse of considerable time for the interchange of communications. To my mind there is nothing in the record returned by the commissioner which casts any doubt upon the good faith of the proceedings.

It follows from the foregoing that the writ of habeas corpus and the writ of certiorari should be discharged, and that the petitioner should be remanded to the custody of the marshal to await the orders of the commissioner in the proceedings pending before him.