**In the Matter of the Extradition of**
**Clodoveo Ortiz GONZALEZ,**
**A Fugitive from the Justice of the**
**Dominican Republic.**

United States District Court
S. D. New York.
May 23, 1963.

[redacted]

Robert M. Morgenthau, U. S. Atty. for Southern Dist. of New York, by Peter K. Leisure, Asst. U. S. Atty., and Eric J. Byrne, Atty., Dept. of Justice, Washington, D. C.

Bertrand D. Gerber and Edward Cherney, New York City, for respondent.

TYLER, District Judge.

Under procedures set forth in 18 U.S.C. § 3184 (9 Stat. 302 (1848)) the United States Attorney here proceeds on behalf of the Dominican Republic in seeking the extradition from this country of Clodoveo Ortiz Gonzalez ("Ortiz"), a national of the Dominican Republic.

The demand for extradition is made under the terms of a Convention entered into between the United States and the Dominican Republic, proclaimed on August 26, 1910, 36 Stat. 2468, which provides for the extradition, to the demanding state, of any person "who may be charged with, or may have been convicted of any of the [following] crimes[:] * * * [m]urder * * *".

On March 6, 1962, a "warrant of provisional arrest" was issued by the Dominican authorities against Ortiz. In an accompanying "Summary Judicial Certification", it is stated:

"In accordance with the depositions made before this Judge on January 31 * * * 1962 * * * the criminal liability of the accused * * * has been fully established[:] * * * Clodoveo Ortiz Gonzalez did, by means of torture in the house of detention named 'the 40', kill the persons named * * * Deschamps * * * and * * * Espertin Oliva * * * on August 12 * * * (1960), as is attested by the eyewitnesses * * * Tineo and * * * Saavedra."

The affidavits of Tineo and Saavedra amply support the conclusion that Ortiz was one of those who, acting in a military or quasi-military capacity under the regime of Generalissimo Rafael Trujillo,[1] did actively participate in the torturing and killing of the two named prisoners.

The burden of proof which must be met in order that certification of an "extraditable offense" be made by this

---

1. Generalissimo Trujillo was assassinated in May, 1961.

court under 18 U.S.C. § 3184 is that the case be proved with the degree of sufficiency necessary to justify commitment for trial under local law.[2] On the record before me, this burden has been met with respect to the crime of murder charged here.[3]

There remain, however, two issues of law.

The treaty applicable here, in common with most treaties of extradition, contains a provision excluding extradition "for any crime or offense of a political character * * * [and] * * * acts connected with such crimes or offenses".[4]

Ortiz bases his opposition to the certification of extraditable offense here sought chiefly on the argument that the crime charged falls within this "political offense" exception.

■ On March 7th, 1963, a United States Commissioner in this District denied extradition of Ortiz for the very crimes charged here, on the grounds that, though amply proved, they were political offenses and as such not cause for extradition. This determination is not finally binding in later, renewed, proceedings.[5] I am constrained to hold that, on the facts disclosed by the record before me, the political offense exception does not apply.[6]

The conception of "political offense", in the context of extradition, is a familiar one.[7]

Both the English and American cases dealing with this issue recognize the leading case to be In re Castioni, 1 Q.B. 149 (1891).

That was a case of first impression in England, applying for the first time the "political offense" exception contained in the applicable extradition statute, 33 and 34 Vict. c. 52 (1870). In that case, the Swiss government sought the extradition of one Castioni for a fatal shooting done by him while he was participating in a violent popular demonstration protesting the government's refusal to submit a proposed constitutional revision to popular vote.

The Queens Bench Division held that extradition for this crime was barred since it was a "political offense".

■ There are three concurring opinions in Castioni which discuss the "political offense" concept at some length. However, they are fairly summarized by the much-quoted definition, set forth by Hawkins, J., according to which those of-

---

2. Collins v. Loisel, 259 U.S. 309, 315–316, 42 S.Ct. 469, 66 L.Ed. 956 (1922); United States v. Stockinger, 269 F.2d 681, 684 (2d Cir., 1959) (" * * * reasonable ground * * * ").

3. The law to be applied is both the local law and the law of the demanding state; that is, the crime must be made out under both legal systems. Pettit v. Walshe, 194 U.S. 205, 217–218, 24 S.Ct. 657, 48 L.Ed. 938 (1904). The United States-Dominican Republic Convention of Extradition, Article I.

4. See, Research in International Law, Extradition, 29 American Journal of International Law (1935) (Supplement) 108–109. There are two, closely related, reasons for the political offense rule. (1) To the extent that an act is "politically" motivated, there may be lacking the *scienter*, or other elements, present in common criminal conduct. Hyde, 1 International Law 572 (1922); In re Castioni, 1 Q.B. 149, 165, 167 (1890).

(2) It might be feared that the demanding government will deal arbitrarily and summarily with its political enemies. Hyde, op. cit., p. 572; English Extradition Act, 33 and 34 Vict. c. 52 § 3 (1870) ("A fugitive criminal shall not be surrendered if the offense * * * is one of a political character or if * * * the requisition for his surrender has in fact been made with a view to try to punish him for an offense of a political character.") ; Cf., Research in International Law, Extradition, supra, at p. 22 (draft extradition convention § 5(a)).

5. United States ex rel. Rutz v. Levy, 268 U.S. 390, 45 S.Ct. 516, 69 L.Ed. 1010 (1925); Collins v. Loisel, 262 U.S. 426, 43 S.Ct. 618, 67 L.Ed. 1062 (1923).

6. By stipulation of the parties, the record of the hearings before the United States Commissioner have been made part of the record before this court.

7. Footnote four, supra.

fenses are political which "were incidental to and formed a part of political disturbances." In re Castioni, 1 Q.B. at p. 166.

Authorities on international law restate the prevailing Anglo-American law in essentially this form.[8]

A leading American case in this area establishes that the political offense exception is applicable to acts of government agents seeking to suppress an uprising, as well as to the acts of those participating in the uprising. In re Ezeta, 62 F. 972, 1002 (N.D.Cal.1894). See also, Karadzole v. Artukovic, 247 F.2d 198 (9th Cir., 1957), rev'd on other grounds, 355 U.S. 393, 78 S.Ct. 381, 2 L.Ed.2d 356 (1958).

■ In either event, however, the general rule is that there must be an "uprising", and that the acts in question must be incidental to it.[9]

■ A hearing was conducted before this court on March 27, 1963,[10] to determine whether in August, 1960, there was such a condition of "uprising" or political disturbance in the Dominican Republic as would justify application of the "political offense" exception to the killings allegedly then committed by Ortiz. The testimony given at that hearing establishes that there was no such disturbed political condition.

Moreover, nothing in the record before me suggests that Ortiz acted with such essentially political motives or political ends as might justify substantial relaxation of the "political disturbance" requirement. (See footnote 9, supra). Indeed, any other conclusion would be contrary to a second contention of Ortiz here, which is that his acts were those of a military subordinate obeying the orders of a superior, and hence were essentially incidents of a system of military discipline.

■ To the extent that this contention is valid, and I conclude from the record before me that it is largely so, Ortiz'

8. Hyde, op. cit., p. 573; Garcia-Mora, "The Nature of Political Offenses", 48 Va.L. Rev. 1226, 1240 ff. (1962) ; Deere, "Political Offenses in the Law and Practice of Extradition", 27 American Journal of International Law 247, 266 (1933).

9. Notwithstanding the validity of this general proposition of law, it must be emphasized that the "political offense" concept is essentially a flexible one. Judge Denman, in In re Castioni, 1 Q.B. 149, 155 (1891), stated: "I do not think it is necessary or desirable that we should attempt to put into language in the shape of an exhaustive definition exactly * * * every state of things which might bring a particular case within the description of an offense of a political character." This in a sense presaged a recent holding of the same court, Ex parte Kolczynski, 1 Q.B. 540 (1955), that mutiny by the crew of a small Polish fishing trawler was a "political offense", notwithstanding that it was not an incident of a political uprising. This case indicates, first, that at least under English law, there is no absolute requirement that there be a political uprising in order for the political offense exception to be applicable, but that the only indispensable ingredient is that the acts be politically motivated and directed towards political ends. 1 Q.B. at p. 550. Secondly, Kolczynski, as well as the his-

tory of the political offense exception in Anglo-American law, arguably indicate that the political offense exception legitimately can be applied with greater liberality where the demanding state is a totalitarian regime seeking the extradition of one who has opposed that regime in the cause of freedom. Cf., Oppenheim, 1 International Law, pp. 704–705 (1955) ; Deere, "Political Offenses in the Law and Practice of Extradition", 27 American Journal of International Law 247, 251 (1933). Indeed, these two factors are closely related: In an effectively repressive totalitarian regime, traditional "political disturbances" or "uprisings" may be unknown despite deep and wide-spread hostility towards the regime. Applying these two factors to the case at bar : (a) The issue whether the acts of Ortiz should be deemed "politically motivated and directed towards political ends" is treated post, pp. 9–10. (b) Nothing in the record before me suggests that the second-named factor is applicable; that is, this does not appear to be a case in which the acts in question were blows struck in the cause of freedom against a repressive totalitarian regime.

10. On April 3, 1963, a further hearing was held, but on that date no testimony was taken.

conduct must be regarded as flowing not so much from a personal commitment to a political cause, as from a personal commitment to a system of military discipline. This, in my view, particularly reinforces the conclusion that the "political offense" principle or exception is inapplicable here.[11]

This raises a second issue of law, which is the effect of Ortiz' contention that he acted under the orders of a superior and in the exercise of public authority, and that hence his conduct cannot be deemed criminal.

■■■■ There is authority for the proposition that "defenses", such as this one, are not to be considered in extradition proceedings but are to be left for the trial court.[12] The thrust of this rule, however, is simply that the extradition court may not attempt to finally resolve issues of fact raised by defenses directed to the merits of the charge. This cannot overturn or impinge upon the rule that the demanding state has the burden of proving the governing law, and of making out its *prima facie* factual case, with respect to any matter which the extradition court deems important, and *bona fide* at issue, bearing on the guilt or innocence of the accused. The criminality *vel non* of these acts of Ortiz, assuming them to have been performed by him as an agent of the Dominican government, is such an issue in this case.

■■■■ The Dominican Republic has met its burden with respect to this issue. Specifically, I am satisfied that under the Dominican law, as under our own law, public officials may be criminally liable for acts which fall well outside duly constituted public authority,[13] and that there is a *prima facie* case that this rule is applicable to the extraordinary homicidal acts ascribed to Ortiz.

Thus, the requirements set forth in 18 U.S.C. § 3184 have been satisfied. One further word, however, may be appropriately added.

■■■■ As noted above,[14] a chief reason for the presence of the "political offense" exception in our extradition treaties is to prevent our legal processes from being used by a foreign regime as instruments of reprisal against its domestic political opponents.

The state of facts in the case at bar, where one foreign regime seeks the extradition of an individual for acts done as an official of a prior regime, presents, at least superficially, a situation where this danger is acutely present.

■■■■ While I have no reason to believe that this danger has materialized in this specific case, I nonetheless fully endorse the following passage from the opinion of the District Court in In re Lincoln, 228 F. 70, 74 (E.D.N.Y.1915):

" * * * [I]t is not a part of the court proceedings nor of the hearing upon the charge of crime to exercise discretion as to whether the criminal charge is a cloak for political action, nor whether the request is made in good faith. Such matters should be left to the Department of State. * * *[15]

"It is thought by the court that application to the Secretary of State of the United States will furnish full protection against the delivery of the accused to any government which will not live up to its treaty obligations, and that the Secretary of State will be fully satisfied (before delivering the accused to the demanding

---

11. The motive or purpose behind the conduct is a significant factor. In re Castioni, 1 Q.B. at pp. 159, 167 (1891); Ex parte Kolczynski, 1 Q.B. at p. 550 (1955); Research in International Law, op. cit. (draft convention on extradition, § 5(b)) (" * * * offenses having a political objective * * * "); Cf., Ornelas v. Ruiz, 161 U.S. 502, 512, 16 S.Ct. 689, 40 L.Ed. 787 (1896) (" * * * political intentions * * * ").

12. In re Ezets, 62 F. 972, 986 (N.D.Cal. 1894).

13. Wharton, 1 Criminal Law & Procedure, 452 (1957); affidavit of Emil Weinberg, of the Dominican Republic, submitted in these proceedings.

14. Footnote four, supra.

15. Indeed, 18 U.S.C. § 3184 gives this court no authority to inquire into such matters.

government) that he is wanted (in the legal sense of that term) upon a criminal charge, that it is not sought to secure him from a country upon which he is dependent as an asylum because of political matters, and that the treaty is not actually used as a subterfuge".

In conclusion, it is here determined that the evidence is sufficient to sustain the charge, for which the extradition of Clodoveo Ortiz Gonzalez is sought, under the provisions of the applicable convention. The Clerk is directed, pursuant to the statute, to certify a copy of this opinion and the record in this case, including transcripts of all testimony received, to the Secretary of State of the United States.

So ordered.