**Robert Montgomery HOOKER, Appellant-Petitioner,**

v.

**Frank X. KLEIN, United States Marshal, N.D. of California, Appellee-Respondent.**

No. 76–3727.

United States Court of Appeals, Ninth Circuit.

May 3, 1978.

1362

Before CHAMBERS and GOODWIN, Circuit Judges, and KELLEHER *, District Judge.

KELLEHER, District Judge:

This is an appeal from a denial of a petition for a writ of habeas corpus challenging a finding of extraditability and order of commitment entered by the district court on September 21, 1976. While the appeal is taken from the denial of habeas corpus relief, the various issues raised herein bear upon the legality of appellant's extradition proceedings.

In March of 1975, the Canadian government requested from the United States extradition of appellant Robert Hooker pursuant to the extradition treaty then in force between the two countries.[1] The requesting documents charged Hooker with theft of various corporate assets following the dissolution of a Canadian corporation of which he was one of two principals. Pursuant to 18 U.S.C. § 3184 (1970)[2] and then Rule 501(a)(6) of the Local Rules of Practice for the Northern District of California[3] the

Claudia A. Wilken, Asst. Federal Public Defender (argued), San Francisco, Cal., for appellant-petitioner.

Murray R. Stein (argued), of U. S. Dept. of Justice, Washington, D. C., for appellee-respondent.

* The Honorable Robert J. Kelleher, United States District Judge for the Central District of California, sitting by designation.

1. Extradition between the United States and Canada is controlled by the United States-United Kingdom treaties on extradition entered into up until 1922. *See* Treaties in Force, 1976, at 42.

2. 18 U.S.C. § 3184 provides:
"Whenever there is a treaty or convention for extradition between the United States and any foreign government, any justice or judge of the United States, or any magistrate authorized so to do by a court of the United States, or any judge of a court of record of general jurisdiction of any State, may, upon complaint made under oath, charging any person found within his jurisdiction, with having committed within the jurisdiction of any such foreign government any of the crimes provided for by such treaty or convention, issue his warrant for the apprehension of the person so charged, that he may be brought before such justice, judge, or magistrate, to the end that the evidence of criminality may be heard and considered. If, on such hearing, he deems the evidence sufficient to sustain the charge under the provisions of the proper treaty or convention, he shall certify the same, together with a copy of all the testimony taken before him, to the Secretary of State, that a warrant may issue upon the requisition of the proper authorities of such foreign government, for the surrender of such person, according to the stipulations of the treaty or convention; and he shall issue his warrant for the commitment of the person so charged to the proper jail, there to remain until such surrender shall be made."

3. Effective August 1, 1971, the Northern District's Local Rules of Practice were amended in part and re-promulgated. The grant of authority to magistrates to conduct extradition proceedings, previously contained in Rule 501 of the old rules, now is set forth in Rule 310–2, which provides:

extradition complaint was referred to a magistrate of that court for review and disposition. After conducting a hearing in which he considered evidence submitted on behalf of the Canadian government and rebuttal evidence submitted by appellant, and upon weighing the credibility of certain witnesses testifying on behalf of appellant, the magistrate found that no crime had been committed in Canada for which appellant could be extradited. The complaint in extradition therefore was dismissed.

Following the magistrate's denial of the extradition request, the government re-evaluated the merits of the case and, upon the reaffirmation of the Canadian government that it wished to press forward with extradition, elected to pursue appellant's extradition. A second request was filed with the general duty judge of the court and assigned to the docket of a district court judge rather than a magistrate. The district court initiated new extradition proceedings, reviewing the government's request exclusively on the basis of the record of the original proceedings held before the magistrate. The court found appellant extraditable and issued a Certification of Extraditability and Order of Commitment. In ordering extradition, the court ruled that the magistrate had erred in considering appellant's rebuttal evidence in that such evidence tended to contradict the evidence proffered by the Canadian government in support of extradition. Appellant subsequently filed for habeas corpus relief, challenging the order of extradition on various grounds, but particularly that the ruling of the magistrate denying extradition should have barred the second extradition request and proceeding. The district court denied the petition for habeas corpus and an appeal to this court was taken.

> "Until a criminal case has been assigned to a judge, a criminal calendar magistrate shall, to the maximum extent possible:
>
> \* \* \* \* \* \*
>
> (c) conduct extradition proceedings in accordance with 18 U.S.C. § 3184.

The extradition proceedings here in issue were subject to old Rule 501, which in pertinent part provided:

Three distinct issues are raised by this appeal. (1) May the government renew an extradition request after an original request on the same facts has been denied by a court of competent jurisdiction? (2) Assuming the government is not limited to one attempt at extradition, what weight, if any, must the court entertaining the second request give to the findings of the first court, and particularly is the first finding res judicata as to the second proceeding? (3) What is the proper scope of review on appeal as to matters concerning extradition proceedings?

■ Because a finding of extraditability is not subject to direct appeal, *see Collins v. Miller,* 252 U.S. 364, 369–70, 40 S.Ct. 347, 64 L.Ed. 616; *United States ex rel. Sakaguchi v. Kaulukukui,* 520 F.2d 726, 729–30 (9th Cir. 1975), collateral review is possible only through a writ of habeas corpus. *See Shapiro v. Ferrandina,* 478 F.2d 894, 901 (2d Cir. 1973), *cert. dismissed by agreement of parties,* 414 U.S. 884, 94 S.Ct. 204, 38 L.Ed.2d 133 (1973). In pursuing habeas corpus relief a fugitive at law subject to an order of extradition necessarily foregoes the advantage of the broader scope of review that attends direct appeal. The area of inquiry into orders of extradition that a habeas corpus court permissibly may undertake is considerably restricted.

> "[H]abeas corpus is available only to inquire whether the magistrate had jurisdiction, whether the offense charged is within the treaty and, by a somewhat liberal extension, whether there was any evidence warranting the finding that there was reasonable ground to believe the accused guilty." *Fernandez v. Phillips,* 268 U.S. 311, 312, 45 S.Ct. 541, 542, 69 L.Ed. 970 (1925), and cases cited therein.

> "(a) Pursuant to 28 U.S.C., Section 635(a)(1) [sic], each of said magistrates within this district shall have all powers and duties conferred or imposed upon the United States Commissioners by law or by the Rules of Procedure for United States District Courts, including but not limited to the following:
>
> \* \* \* \* \* \*
>
> (6) To conduct extradition proceedings pursuant to 18 U.S.C. § 3184."

The sufficiency of evidence establishing the criminality of the accused cannot be reviewed on habeas corpus. *Grin v. Shine*, 187 U.S. 181, 192, 23 S.Ct. 98, 47 L.Ed. 130 (1902). While an appeal may not be used to expand the scope of review of extradition orders, we proceed to consider appellant's more substantial contentions insofar as they raise questions regarding the jurisdiction of the second extradition court. It may be noted, however, that a writ of habeas corpus cannot take the place of a writ of error and "is not a means for rehearing what the magistrate already has decided." *Fernandez v. Phillips, supra.* Our review therefore will not encompass every asserted error in the extradition proceedings.

## I. Renewal of Extradition Request

After the government's initial request for an order of extradition was denied by the magistrate, it filed a new complaint in extradition in an attempt to obtain a more favorable ruling. Appellant argues that where the government's first request has been denied following an extensive evidentiary hearing and full consideration of the merits of the case by an extradition court, the government should be barred from renewing the request on the same evidentiary facts. The law of international extradition long has recognized that the government is free to pursue extradition notwithstanding initial unsuccessful efforts. In *Collins v. Loisel (Loisel II)*, 262 U.S. 426, 43 S.Ct. 618, 67 L.Ed. 1062 (1923), the Supreme Court acknowledged and affirmed the government's right to reinstitute extradition proceedings, noting that "it has been consistently held under the treaties with Great Britain and other countries, that a fugitive from justice may be arrested in extradition proceedings a second time upon a new complaint charging the same crime, where he was discharged by the magistrate on the first complaint or the complaint was withdrawn." *Id.* at 429, 43 S.Ct. at 619.[4] *Loisel II* involved a renewed extradition request after an earlier order of extradition had been set aside on habeas corpus. In affirming the power of the government to pursue extradition more than once, the court recognized the potentiality for abuse in such authority, but observed that "protection against unjustifiable vexation and harassment incident to repeated arrest for the same alleged crime must ordinarily be sought, not in constitutional limitations or treaty provisions, but in a high sense of responsibility on the part of the public officials charged with duties in this connection." *Id.* at 429–30, 43 S.Ct. at 619. It is clear, therefore, that constitutional considerations do not constitute a bar to reinstituted extradition proceedings and that relief from the abuse of multiple attempts to extradite lies not in judicial limitation, but rather with the fair-mindedness of the government in fulfilling its obligation under treaties of extradition.

The decisions of lower courts on the issue have been in accord with that expressed by the Supreme Court in *Loisel II.* In *Ex parte Schorer*, 195 F. 334 (E.D.Wis.1912), the court declared that it was the power and duty of the government to renew a request for extradition if it is convinced of the merits of its position. Similarly, in *In re Kelly*, 26 F. 852 (C.C.Minn.1886), the court noticed that it would be "a violation of the spirit, if not of the letter, of the treaty," if there could be no second examination of a fugitive. *Id.* at 854. A more recent example of application of the rule is *In re Gonzalez*, 217 F.Supp. 717 (S.D.N.Y. 1963), in which the government's first request for extradition was denied on the ground that the alleged act of the fugitive fell within the "political crimes" exception of the governing treaty. When the government chose to refile its request, the court assigned to the second proceeding rejected the argument that it was bound by the prior denial, citing for support the *Loisel II* decision. While no opinion of this Court expressly has approved the practice of reinstituted extradition requests, in *Desmond v. Eggers*, 18 F.2d 503 (9th Cir. 1927), this Court expressed no doubt that upon

---

4. The extradition authority between the United States and Canada derives from treaties of extradition between the United States and Great Britain. *See* footnote 1, *supra.*

denial of an original extradition request, a second filing by the government was a permissible course of action.

Appellant does not contest the validity of these decisions, but rather attempts to distinguish them as cases in which reinstituted proceedings followed denial of extradition orders on procedural grounds, or cases in which second extradition requests were pursued on the basis of new evidentiary facts.

While in *Loisel II* dismissal of the first extradition order arguably was for reasons of procedural defects rather than on the strict merits, there is no indication the Court intended its holding to turn on this distinction. Indeed, the Court's clearly stated preference for government fair-mindedness over judicial constraints as a curb to abusive use of multiple extradition requests indicates that the Court was formulating a broad rule applicable to the entire practice of reinstituting extradition proceedings. Consequently, we construe *Loisel II* as holding that where the government in good faith determines that extradition is warranted, it is not barred from pursuing multiple extradition requests irrespective of whether earlier requests were denied on the merits or on procedural grounds.

## II. Res Judicata

Assuming the government files a new request for extradition after an earlier request has been denied on the merits, what effect, if any, should the earlier proceedings and findings have on the reinstituted proceedings? Appellant contends that the doctrine of res judicata applies to the second proceeding and compels the court hearing a renewed request to adopt the findings of the first court.

This position raises an issue that has received only slight attention by the courts. Of course, those cases approving second extradition proceedings implicitly recognize that reconsideration of the merits is not barred by an initial denial of extradition. *See, e. g., Ex parte Schorer*, 195 F. 334

(E.D.Wis.1912); *In re Gonzalez*, 217 F.Supp. 717 (S.D.N.Y.1963). Aside from these decisions, however, only a handful of cases have expressly addressed the question of whether res judicata applies to extradition proceedings.

*Loisel II* provides the most authority on the subject. There, upon a request of the British government for extradition, the magistrate found the fugitive at law extraditable and entered an order of commitment. That order was later discharged by the district court on a writ of habeas corpus on the ground that between the time of the order of extradition and the hearing on the habeas corpus petition, Great Britain had filed a new request for extradition supported by new affidavits, and that the fugitive was being held in custody to answer to these new charges. The second extradition proceeding again resulted in a finding of extraditability and as to this finding habeas relief was denied. On review by the Supreme Court, it was contended that commitment of the fugitive on the new set of affidavits after the original order of extradition had been discharged on habeas corpus was barred by the doctrine of res judicata since the affidavits in the second proceeding were "identical in form and substance" to those supporting the first request. Rejecting the argument, the Court held that "discharge of Collins on the first petition for habeas corpus . . . does not operate as res judicata." 262 U.S. 426, 430, 43 S.Ct. 618, 619, 67 L.Ed. 1062. The Court further noted that "the discharge here in question did not go to the right to have Collins held for extradition. It was granted because the proceedings on which he was then held had been irregular and the British consul general, instead of undertaking to correct them, had concluded to abandon them, and to file the charges anew by another set of affidavits." *Id.* This seeming limitation on the Court's holding leaves unsettled the question of whether an original denial of extradition on the merits should have any effect on subsequent extradition proceedings on the same charges.[5]

---

5. The issue of the applicability of res judicata to extradition proceedings was briefly touched

upon by this Court in *Desmond v. Eggers*, 18 F.2d 503 (9th Cir. 1927), *motion to stay execu-*

The doctrine of res judicata provides that a valid, final judgment, when rendered on the merits, is a bar to a subsequent action between the same parties or those in privity with them upon the same cause of action. *See Lawlor v. National Screen Service Corp.*, 349 U.S. 322, 326, 75 S.Ct. 865, 99 L.Ed. 1122 (1955); IB *Moore's Federal Practice* ¶ 0.405[1]. Before the doctrine may apply, there must be (1) a valid, final judgment, (2) rendered on the merits, (3) a subsequent action involving the same parties or those in privity with them, (4) that is based on the same cause of action or claim.

Unlike the usual case in which a proceeding may be analyzed according to established principles to determine whether the disposition is a final judgment,[6] an order of extraditability defies easy classification. The function of an extraditing court is not to decide the guilt or innocence of the fugitive at law, but rather to determine whether there is "competent legal evidence which . . . would justify his apprehension and commitment for trial if the crime had been committed in [the forum] state." *Collins v. Loisel* [*Loisel I*], 259 U.S. 309, 315, 42 S.Ct. 469, 471, 66 L.Ed. 956 (1922). If the extraditing court finds that the fugitive is extraditable on the charges alleged in the warrant, it must certify that fact to the Secretary of State and issue a warrant for the commitment of the accused until the fugitive is surrendered to the foreign government or extradition denied. *See* 18 U.S.C. § 3184 (1970). The extraditing court also has the duty to determine whether the party brought before it is the one named in the complaint. *See Fernandez v. Phillips*, 268 U.S. 311, 45 S.Ct. 541, 69 L.Ed. 970 (1925); *Charlton v. Kelly*, 229 U.S. 447, 33 S.Ct. 945, 57 L.Ed. 1274 (1913). A finding of extradition signals the start, rather than the conclusion, of litigation of the fugitive's guilt or innocence. As opposed to a final judgment, it is truly an interlocutory order, more akin to a preliminary hearing on criminal charges. And in that area of the law, it is well settled that a finding of lack of probable cause does not bar the state from rearresting the suspect on the same charges.[7] Because the extra-

---

tion denied, 274 U.S. 722, 47 S.Ct. 657, 71 L.Ed. 1341 (1927). There the original order of extradition was discharged on habeas corpus on the ground that the affidavits and documents submitted by the Canadian government were not properly certified. The request was refiled and again resulted in an order of extradition. The habeas corpus court again discharged the order of commitment and the government appealed to the Ninth Circuit. On appeal the argument was raised that the first order of discharge in the habeas corpus proceeding was res judicata, and the Court offered the following discussion:

"Assuming, without deciding, that the first order of discharge was res adjudicata [sic], it could only be so as to the case then before the court. On the second hearing, as already stated, further competent testimony was offered by the Canadian government, sufficient in itself to make out a prima facie case, regardless of the certification by the consular officer. From this statement it becomes at once apparent that the order in the first proceeding was not a bar to the second proceeding, based as it was on different testimony." *Id.* at 506.

6. *See, e. g., American Surety Co. v. Baldwin*, 287 U.S. 156, 53 S.Ct. 98, 77 L.Ed. 231 (1932) (judgment on proceeding begun by motion res

judicata); *Stewart v. Minnick*, 409 F.2d 826 (9th Cir. 1969) (dismissal of civil rights action as against state res judicata); *Glick v. Vallentine Produce, Inc.*, 397 F.2d 590 (8th Cir. 1968) (dismissal for failure to state a cause of action is final judgment on merits).

7. *See Bassing v. Cady*, 208 U.S. 386, 28 S.Ct. 392, 52 L.Ed. 540 (1908).

The Fifth Amendment's protection against double jeopardy does not attach until the defendant is put to trial before the trier of fact. *See Serfass v. United States*, 420 U.S. 377, 388, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975). In a jury trial the defendant is first exposed to jeopardy when the jury is empaneled. *Serfass, supra*. In a nonjury trial jeopardy attaches when the court begins to hear evidence. *See United States v. Choate*, 527 F.2d 748 (9th Cir. 1975), *cert. denied*, 425 U.S. 971, 96 S.Ct. 2167, 48 L.Ed.2d 794 (1976). The purpose of a preliminary hearing, of course, is to require the government to show probable cause to hold a suspect pending trial. Fed.R.Crim.Pro. 5.1.

The Supreme Court in *Loisel II*, in condoning multiple extradition requests, analogized an extradition proceeding to a preliminary examination of one arrested on suspicion of a crime. 262 U.S. 426, 429, 43 S.Ct. 618, 67 L.Ed. 1062.

diting court does not render judgment on the guilt or innocence of the fugitive, it cannot be said that an order of extraditability constitutes a final judgment for purposes of res judicata.

 Not only must a judgment be final before it will have res judicata effect, but also it must have been "on the merits." *See Lawlor v. National Screen Service Corp.*, 349 U.S. 322, 75 S.Ct. 865, 99 L.Ed. 1122 (1955). The nature of an extradition proceeding is such that the merits of the fugitive's guilt or innocence are not explored. As noted above, the duty of the extraditing court is to determine only whether there exists competent evidence which justifies the apprehension and commitment of the fugitive. Participation by the fugitive at the extradition proceeding is limited; he is not permitted to introduce evidence on the issue of guilt or innocence but can only offer evidence that tends to explain the government's case of probable cause. *See Charlton v. Kelly*, 229 U.S. 447, 33 S.Ct. 945, 57 L.Ed. 1274 (1913). Thus, the extraditing court properly may exclude evidence of alibi, of facts contradicting the government's proof, or of a defense such as insanity. *Charlton, id.* at 456, 33 S.Ct. 945; *Shapiro v. Ferrandina*, 478 F.2d 894, 901 (2d Cir. 1973). Because of the limited function of an extradition proceeding and the limited participation permitted of the fugitive, the order of the court does not reflect a consideration of all the merits of the case.

 The doctrine of res judicata is a judicially created rule which "rests upon considerations of economy of judicial time and public policy favoring the establishment of certainty in legal relations." *Commissioner v. Sunnen*, 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948). Aside from the ground that an extradition proceeding fails to satisfy the technical requirements of res judicata, there is ample reason in judicial policy to refrain from applying it to matters of extradition. Because there is no appeal from an extradition decision by either the accused or the government, re-institution of an extradition request permits the government to fulfill its obligations under treaties of extradition with foreign governments when it is of the good faith belief that extradition is justified. In many cases the government may be able to obtain additional information tending to establish the necessary probable cause or else make a more persuasive showing on the basis of the same evidence that an order of extradition is appropriate. These reasons, together with the patent inapplicability of the requirements of res judicata to extradition orders, compel the Court to conclude that it is wholly inappropriate to apply res judicata concepts to the findings resulting from extradition proceedings.

### III. Scope of Review

 The scope of review of an extradition order is considerably more restricted than that generally engaged in by an appellate court. On collateral review by habeas corpus, the Court is not permitted to inquire beyond whether (1) the extradition judge had jurisdiction to conduct extradition proceedings; (2) the extradition court had jurisdiction over the fugitive; (3) the treaty of extradition was in full force and effect; (4) the crime fell within terms of the treaty; and (5) there was competent legal evidence to support a finding of extraditability. *See Fernandez v. Phillips*, 268 U.S. 311, 312, 45 S.Ct. 541, 69 S.Ct. 970 (1925). In denying appellant's habeas corpus petition, the court below did not make express findings of fact and conclusions of law. We therefore undertake a brief inquiry into the second extradition proceedings held before the district court and which resulted in an order of extradition.

 Pursuant to 18 U.S.C. § 3184, the district judge had jurisdiction to entertain and rule upon a request for extradition pursuant to the treaty then in force between the United States and Canada. Concurrent jurisdiction in the magistrates of the Northern District of California pursuant to then Local Rule 501 neither diminished nor affected in any manner the power of the district judge to hear the second extra-

dition request.[8] Appellant concedes that a fully effective treaty of extradition was in force between the United States and Canada at the time of his commitment and that the crime charged was within the terms of the treaty. The record of the extradition proceeding also reveals that there was competent legal evidence before the extradition judge upon which he could find that the person before him was the one named in the extradition warrant and that there was probable cause to believe that the crime was committed in Canada. None of the findings of the extradition court is clearly erroneous.

 Admission of evidence proffered by the fugitive at an extradition proceeding is left to the sound discretion of the court, guided of course by the principle that evidence of facts contradicting the demanding country's proof or establishing a defense may properly be excluded. *See Charlton v. Kelly*, 229 U.S. 447, 456, 33 S.Ct. 945, 57 L.Ed. 1274 (1913); *Shapiro v. Ferrandina*, 478 F.2d 894, 901 (2d Cir. 1973), *cert. dismissed by agreement of parties*, 414 U.S. 884, 94 S.Ct. 204, 38 L.Ed.2d 133 (1973). The extradition court had before it the entire record of the first extradition proceeding, containing the transcripts of testimony offered by appellant's witness. We cannot say the court abused its discretion in not permitting appellant a broader opportunity to introduce evidence.

 Appellant urges this Court to review the proceedings on the first extradition request held before the magistrate for the purpose of determining whether any errors of law were committed there. In light of our holding that the government was not barred in renewing an application for extradition on the same charges against appellant, we find it unnecessary to consider matters arising from the first extradition proceeding; such matters are simply irrelevant to this appeal. As noted above, the district judge who entertained the second extradition request had jurisdiction to do so and was not required to refer the matter to the magistrate nor adopt findings made in the first extradition proceeding. Because only the order of extradition issuing from the second set of proceedings is under review here, and finding no error of law in those proceedings, we affirm the order of the court below denying appellant's petition for a writ of habeas corpus.

AFFIRMED.

CHAMBERS, Circuit Judge, concurring:

I concur in the judgment of affirmance of the denial of the writ of habeas corpus, but I have some slightly different ideas from Judge Kelleher.

This extradition business is sui generis and, grounded in equity, I think we can write some rules, at least until overruled by higher authority.

We must agree that the statutes give no right of direct appeal to anybody on an extradition decision, but the "victim" of an extradition order generally gets a pretty broad review under habeas corpus, notwithstanding preachments that it is extremely limited.

I would give the government at least one more shot on extradition when the magistrate has clearly made a wrong ruling, and I think he did here. He let the fugitive put on a pretty fair defense, whereas the fugitive is only entitled to explain or clarify government allegations.

If, on the face of things on the second petition, it appears that a magistrate was clearly right, the second forum should dismiss the petition on that ground. In effect, affirm; although we must not call it that.

If it appears the magistrate may or may not have been right, we ought to give the government a second judge. How many more times, we need not say now. (And, always keep in mind the "fugitive" can get a pretty fair review on habeas corpus on an appeal of an adverse ruling in the second forum.)

I do not mean to suggest that we should permit the government in the Central Dis-

---

8. *See* n.3, *supra.*

trict of California (the Ninth Circuit's largest district) to try out seriatim four magistrates, four retired judges and sixteen active judges. There has to be a point to say, "Lay off, Macduff."