finds that amount to be Fifty One Thousand Two Hundred Ninety Three Dollars and Ninety Five Cents ($51,293.95).

■ Defendant Memorial Park Cemetery Association argues that any award of attorney's fees should be apportioned equally among the eleven (11) defendants. Inasmuch as the final injunctive relief was directed toward the defendants collectively, and no apportionment of liability was made as a result of the litigation, there appears to be no basis for apportioning the fees among the defendants on a percentage basis. Accordingly, attorney's fees will be taxed to all named defendants jointly and severally.

**In the Matter of the Extradition of Eugene Aloys TAFOYA, A Fugitive From Canada.**

**No. A–83–CA–201.**

United States District Court,
W.D. Texas,
Austin Division.

Sept. 12, 1983.

Edward C. Prado, U.S. Atty., San Antonio, Tex. by Daniel E. Fromstein, Washington, D.C., for the United States.

Joseph A. Calamia, El Paso, Tex., for Eugene A. Tafoya.

## MEMORANDUM SUPPORTING EXTRADITION CERTIFICATION

SUTTLE, Senior District Judge.

In this action the United States, on behalf of the government of Canada, seeks to extradite Eugene Aloys Tafoya for willfully doing an act

> that was likely to constitute mischief causing actual danger to life; to wit, wilfully destroying an automobile, the property of Robert A. Manina by setting the automobile on fire when it was parked in the driveway of a residential home located at 221 Pandora Avenue North, Kitchener, contrary to Section 387(5) of the Criminal Code of Canada.

In January of this year the government filed a similar extradition complaint with United States Magistrate Janet Ruesch in the El Paso Division of this district. In that complaint the government sought extradition of Tafoya on the above charge, as well as for committing

> mischief by willfully damaging without legal justification or excuse and without colour of right the automobile of Robert A. Manina by setting it on fire which damage did exceed fifty dollars, contrary to Section 387(4) of the Criminal Code of Canada.

We will refer to the latter charge as the Section 387(4) offense, and the former charge as the Section 387(5) offense.

In March of 1983, Judge Ruesch held that Tafoya was extraditable to Canada on the Section 387(4) offense but not on the Section 387(5) offense. The magistrate found that the Section 387(5) offense did not meet the "dual criminality" requirement of the extradition treaty between the United States and Canada. *See* Article 2(1) of the Treaty on Extradition Between the United States and Canada, T.I.A.S. No. 8237, ratified in 1976.

Thus, as matters now stand, although Tafoya could be extradited to Canada (once the Secretary of State issues a surrender order pursuant to 18 U.S.C. § 3186) to be tried for the Section 387(4) offense, he could not be tried for the Section 387(5) offense, even though he would be physically in Canada. The principle of specialty [1] compels this result. Furthermore, Canadian judicial authorities wish to prosecute Tafoya on both charges that have been laid against him. Unable to appeal the magistrate's decision to decline extradition on the Section 387(5) offense, *Matter of Mackin,* 668 F.2d 122 (2d Cir.1981), the United States has filed a new extradition complaint with respect to that offense. *See Hooker v. Klein,* 573 F.2d 1360 (9th Cir.1978), *cert. denied,* 439 U.S. 932, 99 S.Ct. 323, 58 L.Ed.2d 327 (1978).

Tafoya puts forth three major arguments against extradition: (1) improper venue, (2) harassment amounting to fundamental unfairness, in violation of the due process clause of the Fifth Amendment and (3) no dual criminality. The Court finds none of these arguments persuasive.

### VENUE

■ Venue is proper in the Western District of Texas because Tafoya is a resident of El Paso, which is in this district, and was first found there. 18 U.S.C. § 3184. *See also* Article 10(1) of the Treaty on Extradi-

tion Between the United States and Canada, T.I.A.S. No. 8237.

The government alleges that it filed its second extradition complaint in the Austin Division instead of the El Paso Division for the following reasons:

Tafoya's recent criminal tax case, A–83–CR–23, was filed in Austin. More importantly, Tafoya's attorney at his first extradition proceeding, Assistant Federal Public Defender Larry Mathews, is now an Assistant United States Attorney at El Paso. If the second extradition complaint had been filed in El Paso, there might have been an appearance of impropriety, with government counsel and Mr. Mathews working out of the same office.

### HARASSMENT

Tafoya asserts that the filing of a second extradition complaint amounts to fundamental unfairness, in violation of the due process clause of the Fifth Amendment.

■ The doctrine of "res judicata" is inapplicable in extradition proceedings. *Hooker v. Klein, supra,* 573 F.2d at 1366–68. An extradition proceeding does not decide guilt or innocence but fulfills the same function as a preliminary hearing does with respect to ordinary criminal charges. *Id.,* 573 F.2d at 1367. The question of how many times the government may reinstitute extradition proceedings after unfavorable attempts to extradite is a decision left largely to the discretion of the executive branch:

. . . The law of international extradition long has recognized that the government is free to pursue extradition notwithstanding initial unsuccessful efforts. In *Collins v. Loisel (Loisel II),* 262 U.S. 426, 43 S.Ct. 618, 67 L.Ed. 1062 (1923), the Supreme Court acknowledged and affirmed the government's right to reinstitute extradition proceedings, noting that "it has been consistently held under the treaties with Great Britain and other

---

**1.** *See Shapiro v. Ferrandina,* 478 F.2d 894, 905–06 (2nd Cir.1973), *cert. dism'd,* 414 U.S. 884, 94 S.Ct. 204, 38 L.Ed.2d 133 (1973), and Article 12 of the Treaty on Extradition between the United States and Canada, T.I.A.S. No. 8237, ratified in 1976.

countries, that a fugitive from justice may be arrested in extradition proceedings a second time upon a new complaint charging the same crime, where he was discharged by the magistrate on the first complaint or the complaint was withdrawn." *Id.* at 429, 43 S.Ct. at 619. *Loisel II* involved a renewed extradition request after an earlier order of extradition had been set aside on habeas corpus. In affirming the power of the government to pursue extradition more than once, the court recognized the potentiality for abuse in such authority, but observed that "protection against unjustifiable vexation and harassment incident to repeated arrest for the same alleged crime must ordinarily be sought, not in constitutional limitations or treaty provisions, but in a high sense of responsibility on the part of the public officials charged with duties in this connection." *Id.* at 429–30, 43 S.Ct. at 619. It is clear, therefore, that constitutional considerations do not constitute a bar to reinstituted extradition proceedings and that relief from the abuse of multiple attempts to extradite lies not in judicial limitation, but rather with the fair-mindedness of the government in fulfilling its obligation under treaties of extradition.

*Hooker v. Klein, supra,* 573 F.2d at 1365 (footnote omitted). Under the circumstances of this case, the Court finds no harassment that would amount to violation of due process. The government is merely taking a second bite at the extradition apple—because it had no right to appeal Judge Ruesch's original order denying extradition on the Section 387(5) offense. This Court is not faced with a fourth or even a third bite at the apple.[2] There was no violation of due process here, for reasons as forcefully stated by Judge Chambers in his concurrence in *Hooker v. Klein, supra:*

We must agree that the statutes give no right of direct appeal to anybody on an extradition decision, but the "victim" of an extradition order generally gets a pretty broad review under habeas corpus, notwithstanding preachments that it is extremely limited.

I would give the government at least one more shot on extradition when the magistrate has clearly made a wrong ruling, and I think he did here.

. . . . .

If, on the face of things on the second petition, it appears that a magistrate was clearly right, the second forum should dismiss the petition on that ground. In effect, affirm; although we must not call it that.

If it appears the magistrate may or may not have been right, we ought to give the government a second judge. How many more times, we need not say now. (And, always keep in mind the "fugitive" can get a pretty fair review on habeas corpus on an appeal of an adverse ruling in the second forum.)

I do not mean to suggest that we should permit the government in the Central District of California (the Ninth Circuit's largest district) to try out seriatim four magistrates, four retired judges and sixteen active judges. There has to be a point to say, "Lay off, Macduff."

*Id.,* 573 F.2d at 1369–70.

## DUAL CRIMINALITY

Tafoya is accused of violating Section 387(5) of the Criminal Code of Canada. Section 387 of the Canadian Code reads in relevant part as follows:

MISCHIEF

387. (1) Every one commits mischief who wilfully

(a) destroys or damages property. . . .

. . . . .

(4) Every one who commits mischief in relation to private property is guilty of

(a) an indictable offence and is liable to imprisonment for five years, or

---

2.  At the extradition hearing before this Court, government counsel, Daniel Fromstein, represented that, if this Court denied extradition on the Section 387(5) offense, the government would not seek a third bite at the extradition apple.

(b) an offence punishable on summary conviction.

(5) Every one who wilfully does an act or wilfully omits to do an act that it is his duty to do is, if that act or omission is likely to constitute mischief causing actual danger to life, or to constitute mischief in relation to public property or private property, guilty of

(a) an indictable offence and is liable to imprisonment for five years, or

(b) an offence punishable on summary conviction.

The likely actual danger to life was that Mr. Manina and his family were in their home early in the morning at the time that Tafoya allegedly set Manina's automobile on fire in their driveway and the home could have caught fire and thus put the lives of Manina and his family in jeopardy. *See* Affidavits of George McLaughlin, John Doerr, and Gerald Beckner in Government's Exhibit # 1.

The dual criminality requirement stems from Article 2(1) of the Treaty, which reads as follows:

> Persons shall be delivered up according to the provisions of this Treaty for any of the offenses listed in the Schedule annexed to this Treaty, which is an integral part of this Treaty, provided these offenses are punishable by the laws of both Contracting Parties by a term of imprisonment exceeding one year.

Pertinent offenses listed in the schedule annexed to the Treaty include:

. . . . .

20. Arson.

. . . . .

24. Willful injury to property.

. . . . .

29. Making or having in possession any explosive substance with intent to endanger life, or to cause severe damage to property.

. . . . .

It is clear that extradition treaties are to be liberally interpreted to effect their purpose, i.e., the surrender of fugitives so that they can be tried for alleged offenses. *Factor v. Laubenheimer,* 290 U.S. 276, 293–94, 54 S.Ct. 191, 195–196, 78 L.Ed. 315 (1933); *Vardy v. United States,* 529 F.2d 404, 406 (5th Cir.1976), *cert. denied,* 429 U.S. 978, 97 S.Ct. 489, 50 L.Ed.2d 587 (1976). There is no doubt, then, that the Section 387(5) offense is encompassed within the types of crimes listed in the schedule attached to the Treaty. Indeed, Tafoya does not argue to the contrary. What Tafoya does contend is that a Section 387(5) offense is not "punishable by the laws of both Contracting Parties by a term of imprisonment exceeding one year." In particular, Tafoya contends that a Section 387(5) offense is not punishable under the "laws" of the United States. A question arises as to which "laws" of the United States do we look.[3]

> Article 2 refers to "the laws of both Contracting Parties". The "Contracting Parties" are the United States and Canada. We therefore look to proscription by similar criminal provisions of federal law or, if none, the law of the place where the fugitive is found or, if none, the law of the preponderance of the states.

*Cucuzzella v. Keliikoa,* 638 F.2d 105, 107 (9th Cir.1981). The respective statutes of the two countries need not be identical; it is sufficient if the particular act charged is a criminal act in both jurisdictions. *Kelly v. Griffin,* 241 U.S. 6, 15, 36 S.Ct. 487, 489, 60 L.Ed. 861 (1916); *Collins v. Loisel,* 259 U.S. 309, 312, 42 S.Ct. 469, 470, 166 L.Ed. 956 (1922); *Cucuzzella v. Keliikoa, supra,* 638 F.2d at 108.

---

**3.** Tafoya has requested the Court to hold the government to its concession that "there are no equivalent federal criminal provisions which are the cognate of Section 387(5) of the Criminal Code of Canada." *Memorandum of Law in Support of Extradition Request of Canada,* at p.

11. However, "[a] court is not bound by the parties' stipulations of law, particularly when those stipulations are erroneous." *King v. United States,* 641 F.2d 253, 258–59 (5th Cir. 1981).

The most analogous federal statute in this situation is found in 18 U.S.C. § 33, which reads in relevant part as follows:

> Whoever willfully, with intent to endanger the safety of any person on board or anyone who he believes will board the same, or with a reckless disregard for the safety of human life, damages, disables, destroys, tampers with, or places or causes to be placed any explosive or other destructive substance in, upon, or in proximity to, any motor vehicle which is used, operated, or employed in interstate or foreign commerce, or its cargo or material used or intended to be used in connection with its operation . . . shall be fined not more than $10,000 or imprisoned not more than twenty years, or both.

Tafoya is alleged to have set the Manina automobile on fire "by using a rolled up newsprint inserted into the gas tank. Either a match or lighter was used to ignite the rolled up paper." *Affidavit of Gerald Beckner,* Government's Exhibit # 1. Title 18 U.S.C. § 33 proscribes the act that Tafoya allegedly committed, because the term "destructive device" as used in the statute includes "any . . . flammable material . . . or matter of a combustible . . . nature. . . ." 18 U.S.C. § 31. In addition, Article 2(3) of the Treaty provides in relevant part as follows:

> Extradition shall also be granted for any offense against a federal law of the United States in which one of the offenses listed in the annexed Schedule is a substantial element, even if transporting, transportation, the use of the mails or interstate facilities are also elements of the specific offense.

Consequently, the fact that 18 U.S.C. § 33 requires that the motor vehicle involved be used in interstate commerce, while § 387(5) has no similar requirement, is no barrier to finding dual criminality. *See Cucuzzella v. Keliikoa, supra,* 638 F.2d at 108.

Accordingly, this Court concludes that the Section 387(5) offense does fulfill the "dual criminality" requirement of the Treaty.

## CONCLUSION

This Court finds that Eugene Aloys Tafoya is extraditable to Canada on the Section 387(5) offense. In accordance with Article 7 of the Treaty, the Court will direct that Tafoya's surrender be deferred until the conclusion of all proceedings and the full execution of any punishments that he may be awarded by the courts of this country.