In the Matter of the **EXTRADITION OF Mario Ruiz MASSIEU.**

**Magistrate No. 95–0612G–01.**

United States District Court, D. New Jersey.

Aug. 2, 1995.

As noted before in my earlier ruling on the application of the United States to extradite the respondent on charges of obstruction of justice, extradition is *sui generis* in nature, neither civil nor criminal. Rule 11 does not specifically address extradition matters, but instead addresses itself to criminal and civil actions. Under General Rule 40B.12, which authorizes United States magistrate judges to conduct extradition hearings, extradition is considered a matter related to duties in criminal cases. This leads me in the first instance to look at General Rule 11E, which addresses criminal matters. That provides, among other things that, "any application for reassignment of a criminal matter to any Judge in a vicinage other than where the assigned Judge is sitting shall be made by notice of motion pursuant to General Rule 12, returnable before the Chief Judge."

This is not a motion to reassign this extradition proceeding to another judge in another vicinage. It is merely an attempt by the Government to have the matter assigned to another judicial officer. Therefore, General Rule 11E is inapplicable.

Rather than address extradition in terms of a criminal proceeding, it might be more useful for the general purposes of General Rule 11 to discuss it in the context of a civil matter. I do this for the simple reason there is not a statewide wheel for extradition proceedings as there is for felony matters. The procedure is that an extradition proceeding is commenced and is assigned to a magistrate judge, as would any criminal complaint be. The extradition proceeding is allocated among the magistrate judges in Newark if this is where the complaint is filed and it is assigned to the magistrate judge who has criminal duty at the time. That appears to me to be more consistent with the matter in which civil actions are allocated and assigned rather than by the districtwide wheel as felony cases are assigned.

General Rule 11B provides in subsection one: "After allocation, each case should be assigned forthwith to a Judge by the Clerk or the deputy charged with such duty, except that in a patent, antitrust or other extraordi-

Faith S. Hochberg, U.S. Attorney by Alberto Rivas, Assistant U.S. Attorney, for Government.

Fleming, Roth & Fettweis by Cathy Fleming, Newark, NJ, Canales & Simonson by J.A. Tony Canales, Corpus Christi, TX, for defendant.

HEDGES, United States Magistrate Judge.

THE COURT: This is the application of the United States to have this matter reassigned. As an initial matter, I must address the question of whether I should refer this motion to the Chief Judge or decide it myself. That is governed by General Rule 11 of this Court.

nary case, assignment shall be made under direction of the Chief Judge."

Subsection 2 of General Rule 11(b) provides: "If it appears that any matter requires immediate attention and the Judge to whom an action has been or would be assigned is not or will not be available, the Clerk or deputy charged with such duty, under the direction of the Chief Judge, shall assign the matter either permanently or temporarily to an available Judge."

General Rule 11C provides: "Promptly after allocation and assignment of a civil case, the Clerk shall notify both parties or their counsel and the Judge of such allocation and assignment. Objections to either the allocation or the assignment of a civil case shall be made, on notice to opposing counsel, before the Judge to whom the case has been assigned."

General Rule 11B.2 is not applicable here. This is not a matter that requires immediate attention, and I am certainly not unavailable to deal with it.

■ General Rule 11B.1 provides that allocation should be made by the Clerk in the normal manner and that in certain matters assignment shall be made under the direction of the Chief Judge. That is simply inconsistent with the manner in which extradition matters are assigned in the District and is inapplicable.

■ General Rule 11C provides if there are objections to either allocation or assignment, the motion should be made to me rather than the Chief Judge. Therefore, I am satisfied that the motion is properly before me rather than the Chief Judge, and I will not refer the motion to her.

I will note for the record, however, that I have advised the Chief Judge of the pendency of the motion and that she has been provided with all of the motion papers as well as the opposition papers.

■ The basis for this motion is set forth in the declaration of Peter Tarnoff, which was submitted by the Government in its motion papers. This declaration, among other things, provides in Paragraph 6: "The outcome of the request for Mario Ruiz Massieu's extradition has significant foreign policy implications for the United States. We therefore wish to ensure that the legal merits receive the most careful and senior-level consideration possible."

Continuing with Paragraph 7: "The extradition request, which involves charges against the former second ranking law enforcement official in Mexico of obstructing an investigation of a political assassination, is of the highest importance to the Government of Mexico. The serious allegations against such a high former official of the Mexican Government are unprecedented in recent Mexican history. Mexico's prosecution of Raul Salinas de Gortari and Mario Ruiz Massieu represents a commitment by President Zedillo to investigate possible corruption and prevent abuses of power by government officials and other powerful individuals in Mexico and to hold them accountable for their actions. The U.S. Government, which has urged that Mexico take such steps strongly supports such efforts of the Zedillo Administration. The failure to bring Mario Ruiz Massieu to trial in Mexico to face the charges against him would be a significant set back to these efforts."

Quoting from Paragraph 8: "In addition, the U.S. Government has urged Mexico to improve its law enforcement cooperation with the United States, particularly in the area of extradition of fugitives. To foster such reciprocal cooperation, it is vital that the U.S. Government be as responsive as possible under our law to extradition requests from Mexico, particularly those to which the Government attaches high priority."

Concluding in Paragraph 9: "The Department of State therefore joins the request of the Department of Justice that the request for Mario Ruiz Massieu's extradition be reconsidered by a U.S. District Court Judge, and that the embezzlement case be likewise considered by the District Court Judge."

It is apparent from this declaration and from the motion papers that the United States Government here is attempting to be responsive to the concerns both of the Executive Branch and of the Mexican Government and the suggestion is that the United States

Courts should likewise be so responsive to the wishes of the United States and Mexican governments.

If the matter was of such importance in the first instance it leads me to question why the Department of Justice did not make an earlier application to have this matter heard by another judicial officer. The conclusion I draw is that the United States Government was content to have this matter heard by me but, now that I have declined to issue a certificate of extraditability, the United States Government thinks that the importance is such that the matter be referred to a United States District Judge rather than me continuing to exercise jurisdiction.

■ It is well-established that the denial of a certificate of extraditability is not a final decision and there is no *res judicata* effect. The Government is free to refile, as in this instance it has. *See, e.g., United States v. Doherty,* 786 F.2d 491 (2d Cir.1986); *Hooker v. Klein,* 573 F.2d 1360 (9th Cir.1978).

Regardless of how a respondent may categorize the fairness of the procedure the fact is that, quoting from *In re Extradition of Tafoya,* 572 F.Supp. 95 (W.D.Tex.1983): "[t]he government is merely taking a second bite at the extradition apple—because it had no right to appeal ..." 572 F.Supp. at 98.

■ The question here is simply who should hear the extradition proceeding. There is no authority for the proposition suggested by the United States that a second extradition request should automatically go to another judicial officer. It is true that in *United States v. Doherty* the court stated, talking about the Government filing another extradition request, "[i]ts sole recourse, as discussed *supra,* has been to file another request—a request that must be considered *de novo* by the new extradition magistrate, who will give the opinion of the previous magistrate only such weight as he would give to an opinion of a respected judge in an unrelated case." 786 F.2d at 501.

■ What is missing from the cases cited by the Government is the procedure in effect in each District Court and the general custom and practice of each District Court, with regard to assignment of extradition proceedings. Nothing suggests to me that there is any need or imperative for a second judicial officer to consider a second extradition request. I appreciate the circumstances surrounding this matter. I understand that I may give some consideration to my prior ruling although I must consider any second request *de novo.* This is explicit in *Doherty* and *In re Extradition of Atta,* 706 F.Supp. 1032, 1035 & n. 2 (E.D.N.Y.1989).

The circumstances here seem to me to be akin to those in a civil action where a judicial officer at the beginning of a case hears a motion to dismiss and denies it and thereafter is asked to entertain a motion for summary judgment. There is no reason why after the development of a full record a judicial officer should be required to set aside and have the matter reassigned. Likewise, if a judicial officer enters a final decision and an appellate court reverses and remands, there is nothing *per se* in the reversal and remand which would require a judicial officer to ask that the matter be reassigned.

■ In the District of New Jersey extradition matters are assigned to the United States magistrate judges. These are given a magistrate judge's number and heard by the duty magistrate judge. It just so happens that when the request to extradite came in, I was the duty magistrate judge. It also so happened that when the United States made its second request to extradite, I was again the duty magistrate judge. The matter is properly before me under the General Rules of Court.

I appreciate my obligations, and I appreciate the manner in which a further extradition application must be considered. The question simply is whether I should ask that this be reassigned to another magistrate judge or to another district judge. Obviously, if I were to ask for reassignment, I would in effect (although the United States suggests it is not asking me to do it) recuse myself. In this regard I am mindful of the legislative history of Section 455 of Title 28 of the United States Code. This provides, in the context of recusal that, "[n]o judge, of course, has a duty to sit where his impartiality might

be reasonably questioned. However, the new test [for recusal] should not be used by judges to avoid sitting on difficult or controversial cases." I have no intention of asking that this matter be reassigned because I might find it difficult or I might find something troublesome about it.

In addition, reassignment as sought by the Government would create a situation where one district judge sits as extradition judge. If a certificate is issued another district judge would be called upon to review what a coordinate judicial officer did, albeit on a limited basis. My assumption would be, although I was not privy to the drafting of the General Rules, that this may be one reason why extraditions were assigned to magistrate judges, to avoid the situation where one coordinate judge reviews what another does.

This motion is troublesome to me for several reasons. It suggests a request made by the Executive Branch through the Justice Department and the State Department, that the Judicial Branch "bend" or ignore established rules of proceeding to further the perceived national interest of the United States.

The motion also appears to demonstrate a misunderstanding or disdain for the entire magistrate judge system. Many extradition proceedings appear to be heard by magistrate judges in the first instance and the suggestion in the motion papers that this matter is so important that an Article III judge should hear it frankly makes no sense given the General Rules and the manner in which extradition proceedings are generally conducted.

The traditions of our Government and country include a number of concepts. Central to those are separation of powers and judicial independence.

I appreciate the concerns Mr. Tarnoff expressed in his declaration. I have the greatest respect for what the Executive Branch of the Government is doing or attempting to do in foreign affairs and for the relationship between the United States and Mexico. I have no wish to deprecate any interest, any sovereign interest, of either government. But it appears that under these circumstances, to paraphrase George Kennan, we would be best served by measuring up to our own traditions. I see no reason why we should not do so here. Therefore, the motion is denied, and we will begin the hearing.