*202 STAMP, Senior District Judge,
concurring in the judgment:
I concur in the result reached by the majority opinion holding that Agent Lee is entitled to qualified immunity and reversing and remanding for dismissal of Snider’s claims of malicious prosecution against Agent Lee. Because I would come to this result through a somewhat different approach, I respectfully write separately.
To prevail on a Fourth Amendment malicious prosecution claim under § 1983, a plaintiff must show that: (1) the defendant initiated or maintained a criminal proceeding; (2) the criminal proceeding terminated in the plaintiffs favor; (3) the proceeding was not supported by probable cause; and (4) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. See Lambert v. Williams, 223 F.3d 257, 260-262 (4th Cir.2000) (observing that a “malicious prosecution” claim under § 1983 is properly understood as a Fourth Amendment claim for unreasonable seizure which incorporates the common law malicious prosecution tort elements except for malice). The element requiring favorable termination of the criminal proceedings constitutes both a predicate for recovery under § 1983 and the accrual date of the claim for determining the running of the statute of limitations. See Brooks v. City of Winston-Salem, 85 F.3d 178, 183-84 (4th Cir.1996). This element is satisfied where a prior criminal case against the plaintiff has been disposed of in a way that indicates the plaintiffs innocence. See Murphy v. Lynn, 118 F.3d 938, 948 (2d Cir.1997) (“Where the prosecution did not result in an acquittal, it is deemed to have ended in favor of the accused ... only when its final disposition is such as to indicate the innocence of the accused.”). A termination may be favorable to an accused where such termination is the result of:
(a) a discharge by a magistrate judge at a preliminary hearing, or
(b) the refusal of a grand jury to indict, or
(c) the formal abandonment of the proceedings by the public prosecutor, or
(d) the quashing of an indictment or information, or
(e) an acquittal, or
(f) a final order in favor of the accused by a trial or appellate court.
Restatement 2d of Torts § 659 (1976); accord Kossler v. Crisanti, 564 F.3d 181, 187 (3d Cir.2009). Requiring a plaintiff to show a favorable termination works to ensure against inconsistent judgments and to avoid parallel litigation on issues of probable cause. See Murphy, 118 F.3d at 948.
In this action, the majority opinion holds that Snider’s claims against Agent Lee must be dismissed because Snider’s acquittal by the South Korean court does not establish the favorable termination element of a Fourth Amendment malicious prosecution cause of action. The majority reaches this result by finding that an accused’s constitutional protections do not extend to foreign prosecutions. According to the majority, Snider may not rely upon her acquittal as establishing the favorable termination element of her malicious prosecution claim because the favorable termination of Snider’s prosecution occurred in a foreign jurisdiction, In the majority’s view, the only United States proceeding relevant to Snider’s malicious prosecution claim is the extradition hearing, which terminated adversely to Snider. Accordingly, the majority concludes that Snider has failed to allege a constitutional violation and that Agent Lee is therefore entitled to qualified immunity.
*203 According to the majority’s opinion, only two elements comprise a Fourth Amendment malicious prosecution claim: (1) a wrongful seizure, and (2) termination in the defendant’s favor of the proceedings following the seizure. As stated above, it seems well established in this Circuit, and others, that a malicious prosecution claim requires at least four elements: (1) the initiation or maintenance of a criminal proceeding; (2) favorable termination of that proceeding; (3) lack of probable cause to support that proceeding; and (4) a wrongful seizure flowing from that proceeding.[1] While the majority’s formulation may possibly be read as implicitly incorporating these four elements, it would probably be useful to explicitly set forth the four elements.
Further, the majority opinion states that Snider was seized by United States law enforcement officials pursuant to an arrest warrant issued on the basis of the Korean government’s extradition request. In the majority’s view, the sole purpose of the arrest was to hold an extradition hearing. This seems to me an overly narrow characterization of the reasons underlying Snider’s seizure. Certainly, Snider was arrested and ordered to appear before a magistrate judge for an extradition hearing, but the extradition hearing was merely a means of prosecuting the broader criminal action against Snider.[2] Thus, I believe the purpose of Snider’s seizure was to determine whether the criminal prosecution should proceed by ascertaining whether Snider was extraditable. In other words, the purpose of the arrest was to advance the prosecution toward its termination (be it favorable or unfavorable). At the conclusion of the extradition hearing, the proceedings against Snider did not end. She was detained, extradited to Korea, tried, and ultimately acquitted. Therefore, it seems to me that the extradition hearing was simply one aspect of the broader purpose of Snider’s arrest — that is, the prosecution of the murder charge against her.
Where a criminal prosecution terminates in favor of a defendant who, as a result of the criminal proceedings, has suffered a deprivation of liberty without probable cause, a Fourth Amendment “malicious prosecution” cause of action will lie. As noted above, a favorable termination can occur in one of many ways. For example, had the magistrate judge concluded that Snider was not extraditable for lack of probable cause, the proceedings would have terminated in her favor. However, acquittal is also a favorable termination. Snider was acquitted. That her acquittal was effected under the authority of the Korean government is not as significant as the fact that the criminal proceedings terminated in her favor.
Also, the majority’s opinion does not seem to me to acknowledge the circumscribed purpose of an extradition hearing and the limited ability of a defendant to challenge the evidence presented against him or her in such a proceeding. The following excerpt from a concurring opin *204 ion in Ordinola v. Hackman, 478 F.3d 588, 608-609 (4th Cir.2007), is instructive:
The extradition hearing, of course, “ ‘is not ... in the nature of a final trial by which the prisoner could be convicted or acquitted of the crime charged against him.’ ” Lo Duca [v. United States, 93 F.3d 1100, 1104 (2d Cir.1996)] (quoting Benson v. McMahon, 127 U.S. 457, 463, 8 S.Ct. 1240, 32 L.Ed. 234 (1888)). Stated differently, the hearing is “not designed as a full trial” but as a means of “inquir[ing] into the presence of probable cause to believe that there has been a violation of one or more of the criminal laws of the extraditing country.” Peroff v. Hylton, 542 F.2d 1247, 1249 (4th Cir.1976); see Eain [v. Wilkes, 641 F.2d 504, 508 (7th Cir.1981)] (“It is fundamental that the person whose extradition is sought is not entitled to a full trial at the magistrate’s probable cause hearing.... That is the task of the ... courts of the other country.”).
Although the extradition statute does not mention “probable cause” and instead directs the extradition court to determine whether there is “evidence sufficient to sustain the charge under the provisions of the proper treaty or convention,” 18 U.S.C.A. § 3184, courts have uniformly interpreted the statutory language to require a finding of “probable cause.” See Vo [v. Benov, 447 F.3d 1235, 1237 (9th Cir.2006)]; Sidali [v. INS, 107 F.3d 191, 195 (3d Cir.1997)]. Thus, “[t]he probable cause standard applicable to an extradition hearing is the same as the standard used in federal preliminary hearings,” meaning that the magistrate judge’s role is merely “to determine whether there is competent evidence to justify holding the accused to await trial.” Hoxha [v. Levi, 465 F.3d 554, 561 (3d Cir.2006) ] (internal quotation marks omitted). In that vein, the evidence considered by the magistrate as part of an extradition hearing “need not meet the standards for admissibility at trial” and “may be based upon hearsay in whole or in part.” [United States v.] Kin-Hong, 110 F.3d [103,] 120 [(1st Cir.1997)] (internal quotation marks omitted).
Not only are the admissibility standards relaxed, but the alleged fugitive’s ability to challenge the government’s evidence or to submit evidence of his own at the extradition hearing is also significantly limited. For example, the fugitive has no right to cross-examine witnesses, see Oen Yin-Choy v. Robinson, 858 F.2d 1400, 1406-07 (9th Cir.1988), or to introduce “contradictory evidence” that conflicts with the government’s probable cause evidence, see Hoxha, 465 F.3d at 561. By contrast, “explanatory evidence” relating to the underlying charges is admissible. See Koskotas v. Roche, 931 F.2d 169, 175 (1st Cir.1991). If the extradition judge concludes that there is, in fact, probable cause, he “is required to certify the individual as extraditable to the Secretary of State.” Vo, 447 F.3d at 1237 (internal quotation marks omitted).
Ordinola v. Hackman, 478 F.3d 588, 608-609 (4th Cir.2007) (Traxler, J., concurring) (emphasis added; footnote omitted). As the concurring opinion in Ordinola observes, the purpose of an extradition hearing is merely to make a probable cause determination, not to conduct a trial on the merits of the criminal charges. Accordingly, the procedural safeguards attending a criminal trial are absent from an extradition hearing. Consequently, evidence which might be excluded at trial, including hearsay evidence, is admissible at the extradition hearing; the accused is prohibited from challenging the government’s evidence and from submitting evidence on his or her own behalf; and the accused has no *205 right to cross-examine witnesses. These conditions set a high bar for obtaining a favorable termination at the extradition stage of proceedings. In a case such as this one, where the evidence supporting probable cause was obtained in the United States by United States federal officials, it seems unreasonable to limit the favorable termination element of a malicious prosecution claim to a favorable result in the extradition hearing, particularly in light of the narrow purpose of such a hearing and the limited ability of the accused to challenge the evidence presented against him or her at that proceeding.
I would also note that, for purposes of a malicious prosecution claim, the prosecution was arguably initiated in the United States.[3] Although formal charges were brought in Korea, the interrogation yielding the allegedly false confession to establish probable cause may properly be considered to have initiated prosecution because it resulted in the issuance of an arrest warrant and, consequently, Snider’s arrest in this country. See Reed v. City of Chicago, 77 F.3d 1049, 1053 (7th Cir.1996) (finding that a wrongful arrest could conceivably constitute the first step towards a malicious prosecution claim). Because the criminal proceedings could be deemed to have been initiated in the United States, I believe that it should be recognized that Snider’s acquittal was a favorable termination of the criminal proceedings against her, even though the termination occurred in Korea.
Finally, the majority opinion contends that the protections afforded to criminal defendants by the United States Constitution do not apply to prosecutions in foreign jurisdictions. As support, the majority opinion cites United States v. Balsys, 524 U.S. 666, 672-74, 118 S.Ct. 2218, 141 L.Ed.2d 575 (1998). There, Aloyzas Bal-sys (“Balsys”), a resident alien in deportation proceedings, refused to answer questions about his activities in certain foreign countries during World War II because his answers could potentially subject him to criminal prosecutions by those foreign governments. As grounds for his refusal to answer, Balsys invoked the Fifth Amendment privilege against self-incrimination. On appeal, the United States Supreme Court framed the issue as “whether a criminal prosecution by a foreign government not subject to our constitutional guarantees presents a ‘criminal case’ for purposes of the privilege against self-incrimination.” Id. at 672, 118 S.Ct. 2218 (emphasis added). The answer, in short, was that it did not. The Court held that a person who fears criminal prosecution only by a foreign government may not invoke the Fifth Amendment privilege against self-incrimination because the sovereign seeking to compel the self-incriminating statements is not the same sovereign that may use the self-incriminating statements in a subsequent criminal prosecution. Id. at 673-74, 118 S.Ct. 2218.
The circumstances in Balsys, I believe, are inapposite to Snider’s case, but the majority’s statement of the proposition of law for which Balsys stands also extends more broadly than that case holds. First, the constitutional privilege that Balsys sought to invoke — the Fifth Amendment right against self-incrimination — was not designed to provide protection in the civil proceedings in which Balsys was then involved, but rather as protection in a possible subsequent crimi *206 nal action. Here, the constitutional guarantee at issue — the Fourth Amendment right to be free from unreasonable seizure — -was designed to provide protection in the very proceedings in which that right was allegedly violated. Moreover, although the Korean government is the sovereign that brought the criminal charges against Snider, it is a United States federal agent who initiated the prosecution in the United States by obtaining the allegedly coerced confession which served as the basis of probable cause for the Korean government’s criminal action against Snider to proceed. It is difficult for me to conclude that Bal-sys means that the Fourth Amendment protection to be free from unreasonable seizure without probable cause does not extend to a United States citizen whose seizure resulted from a coerced confession obtained by a United States federal agent on United States soil merely because a foreign sovereign, not the United States, pursued the criminal action.
Although the analysis and rationale set forth in the majority opinion differ from mine, I firmly believe that the majority reaches the correct result. A law enforcement officer who presents all relevant probable cause evidence to a prosecutor, a magistrate, or other intermediary is insulated from a malicious prosecution claim where such intermediary makes an independent decision to pursue prosecution or issue a warrant, thereby breaking the causal chain between the officer’s conduct and the prosecution unless the officer concealed or misrepresented facts or brought such undue pressure to bear on the intermediary that the intermediary’s independent judgment was overborne. See Rhodes v. Smitkers, 939 F.Supp. 1256, 1274 (S.D.W.Va.1995) (collecting cases), aff'd, 91 F.3d 132 (4th Cir.1996); see also Taylor v. Meacham, 82 F.3d 1556, 1564 (10th Cir.1996); Reed v. City of Chicago, 77 F.3d 1049, 1053 (7th Cir.1996). Here, the Assistant United States Attorney pursued prosecution on behalf of the Korean Government by seeking a provisional arrest warrant and subsequent extradition. An arrest warrant was issued and a detention hearing was held. The magistrate judge ordered Snider detained pending her extradition hearing. Moreover, an extensive extradition hearing was held. After that hearing and in consideration of the evidence presented, the magistrate judge found that the evidence established probable cause to extradite Snider. Nothing on the record suggests that Snider alleges that Agent Lee made false or misleading statements to the prosecutors or the magistrate judge or that Agent Lee otherwise brought undue influence to bear on their independent judgment. Under these circumstances, even if Agent Lee coerced Snider into falsely confessing, the causal chain was broken, and, accordingly, there was no constitutionally infirm seizure. Therefore, Snider’s malicious prosecution claim should not have been permitted to go forward, since Agent Lee is entitled to qualified immunity.

. Some courts require a showing of malice as a fifth element. The Fourth Circuit has rejected malice as an element to a Fourth Amendment "malicious prosecution” claim. See Brooks v. City of Winston-Salem, 85 F.3d 178, 184 n. 5 (4th Cir.1996).

. Extradition is sui generis, neither civil nor criminal in nature. See, e.g., Jhirad v. Ferran-dina, 536 F.2d 478, 482 (2d Cir.1976), cert. denied, 429 U.S. 833, 97 S.Ct. 97, 50 L.Ed.2d 98 (1976); Martin v. Warden, 993 F.2d 824, 828 (11th Cir.1993); In re Nava Gonzalez, 305 F.Supp.2d 682, 689 (S.D.Tex.2004); In re Extradition of Massieu, 897 F.Supp. 176, 177 (D.N.J.1995).

. As noted above, one of the elements of a Fourth Amendment "malicious prosecution” claim is the initiation or maintenance of a criminal proceeding by the defendant in the malicious prosecution action. See Lambert v. Williams, 223 F.3d 257, 260-262 (4th Cir.2000).